JULIUS H. KRUEGER v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY COMPANY.[1]

June 8, 1897.

Nos. 10,514—(115).

## Common Carrier—Ejection of Passenger—Evidence—Limited Contract—Mistake in Ticket.

Plaintiff purchased from defendant's agent a mileage ticket or book, containing 2,000 miles of transportation, for which he paid $50. The date of issue was stamped on the ticket, and it was, by the mistake of the agent, punched on the margin to expire on the day it was issued, instead of a year later. Plaintiff signed a contract printed on the cover, which stated that the ticket was "void for passage after date punched in margin." He offered this ticket and the mileage thereon for his fare on defendant's train. It was refused. He refused to pay other fare, and was ejected by the conductor. *Held*, proof of these facts was sufficient evidence to sustain a verdict for plaintiff, and the court erred in dismissing the action.

## Same—Reformation and Enforcement.

*Held*, as to the date on which the contract was limited to expire, the plaintiff was not bound by the contract as written until it was reformed in a court of equity. It appearing that the price charged him was an unreasonable and extortionate price for all the transportation he could use on the day the ticket was issued, the provision limiting the ticket to expire on that day was void. Whether or not it would not be contrary to public policy to require a mistake in a written contract for transportation, entered into between a passenger and a common carrier, to be corrected in a court of equity before the former can insist that the latter shall perform or respect the contract actually agreed upon, quære.

## Same—Rule as to Damages.

Rule as to measure of damages laid down where the ticket presented to the conductor appears on its face to be void. *Held*, in such a case, the passenger cannot increase the amount of his damages by refusing to leave the train, and compelling the conductor to eject him by force, unless, from the circumstances appearing on the face of the ticket and the surrounding .circumstances known to the conductor, it is probable that a mistake has been made by the company in issuing the ticket, and this probability is so strong that the conductor should, under the circumstances, investigate further before ejecting the passenger.

[1] Reported in 71 N. W. 683.

Appeal by plaintiff from an order of the municipal court of Minneapolis, W. A. Kerr, J., denying a new trial after a dismissal of the action at the close of plaintiff's evidence. Reversed.

*M. L. Cormany,* for appellant.

The passenger had the right to stand on his contract with the ticket agent, and if he was not furnished with a ticket evidencing his rights secured by the contract entered into, the company should have corrected the mistake when the emergency required, and was liable for ejecting him from the train. Carsten v. Northern, 44 Minn. 454; Gulf v. Rather, 3 Tex. Civ. App. 72; Cain v. Minneapolis, 39 Minn. 297; Burnham v. Grand Trunk, 63 Me. 298. It was the duty of the company to give plaintiff a perfect book plainly stamped and correctly punched. It knew of the terms of the contract through another agent, the one with whom the passenger dealt in purchasing his right to transportation. St. Louis v. Mackie, 71 Tex. 493; Pennsylvania v. Bray, 125 Ind. 229; Wightman v. Chicago, 73 Wis. 169; Head v. Georgia, 79 Ga. 358; Baltimore v. Bambrey, 16 Atl. 67; International v. Hassell, 62 Tex. 256; Serwe v. Northern, 48 Minn. 78; Hufford v. Grand Rapids, 64 Mich. 631; Trice v. Chesapeake, 40 W. Va. 271. A passenger on a train with a defective ticket, but showing on its face to have been issued by the line controlling the train upon which he is riding, is not chargeable for the mistakes of the agents of the railroad company who have sold him that ticket, or evidence of passage, and the conductors handling the train. Gulf v. Rather, supra; Trice v. Chesapeake, supra; Head v. Georgia, supra; Pennsylvania v. Bray, supra; Laird v. Pittsburg, 166 Pa. St. 4.

*L. K. Luse, Henry Conlin,* and *T. A. Polleys,* for respondent.

The mileage book, even if considered as nothing more than an ordinary ticket, was conclusive as to appellant's right to ride as between himself and the conductor. Elliott, Railroads, § 1594; Pouilin v. Canadian, 52 Fed. 197. See particularly in this connection Frederick v. Marquette, 37 Mich. 342; Hufford v. Grand Rapids, 53 Mich. 118; Bradshaw v. South, 135 Mass. 407; Callaway v. Mellett, 15 Ind. App. 366; Peabody v. Oregon, 21 Ore. 121; Yorton v. Milwaukee, 54 Wis. 234. The passenger who begins his trip upon a ticket which is, by the express terms set forth upon its face, expired and void, may be lawfully ejected from the train upon his refusal to pay fare, and, as

between himself and the conductor, the face of the ticket is conclusive as to his right to ride. Carsten v. Northern, 44 Minn. 454; Pine v. St. Paul, 50 Minn. 144; McLean v. Chicago, 50 Minn. 485; Appleby v. St. Paul, 54 Minn. 169. The mileage book was an express contract, signed by the plaintiff, and he was bound by the conditions expressed in it, whether he did or did not read them or know what they were. Boylan v. Hot Springs, 132 U. S. 146; Fonseca v. Cunard, 153 Mass. 553; Rahilly v. St. Paul, 66 Minn. 153; Dunlap v. Northern, 35 Minn. 203; Louisville v. Nicholai, 4 Ind. App. 119; Johnson v. Philadelphia, 63 Md. 106; Pennington v. Philadelphia, 62 Md. 95; Howard v. Chicago, 61 Miss. 194; Mosher v. St. Louis, 127 U. S. 390; Central Trust v. East Tennessee, 65 Fed. 332; Trice v. Chesapeake, 40 W. Va. 271; Abram v. Gulf, 83 Tex. 61; Sherman v. C. & N., 40 Iowa, 45. The right to insist that the mileage book was expired and void was not waived. Hill v. Syracuse, 63 N. Y. 101; Dietrich v. Pennsylvania, 71 Pa. St. 432; Johnson v. Concord, 46 N. H. 213; Trotlinger v. East, 11 Lea, 533; New York v. Feely, 163 Mass. 205; Sherman v. C. & N., supra. If, through mistake, the mileage book failed to state upon its face the correct date of expiration, it was none the less binding upon plaintiff until reformed. Morrison v. Lovejoy, 6 Minn. 224 (319); St. Anthony v. Merriman, 35 Minn. 42; Quinby v. Shearer, 56 Minn. 534.

CANTY, J. Plaintiff alleges that he was a passenger on defendant's train, was ejected therefrom by the conductor, and claims damages therefor. On the trial, the court dismissed the action at the close of plaintiff's evidence, and from an order denying a new trial plaintiff appeals. It appears by the evidence that plaintiff is a traveling man. On June 29, 1895, he purchased of the railroad station agent at Redwood Falls, in this state, a mileage ticket or book in the ordinary form, containing 2,000 miles of transportation, for which he paid $50. There was a contract printed on the cover which he signed. The date of issue was also stamped on the cover, and on the margin of the cover was a series of dates, the proper day, month, and year in which were to be punched so as to indicate the time when the right to use the transportation would expire. By mistake, the date June 29, 1895, was punched, so as to make the transportation expire on the day it was issued, instead of a year later, as was intended. The

year 1895 was punched instead of the year 1896. The contract so signed stated, among other things, that the 2,000 mile ticket was issued for the exclusive use of plaintiff, was not transferable, was subject to conditions named therein, and was "void for passage after date canceled in margin."

Plaintiff used this ticket until January 15, 1896, without objection, by which time 1,600 miles of the transportation had been torn out of the book, and taken up by the company for plaintiff's fare on its trains, leaving 400 miles still in the book. On that day, plaintiff boarded defendant's passenger train at Minneapolis, for the purpose of riding thereon to Shakopee, in this state. Between Minneapolis and St. Paul the conductor demanded fare, and plaintiff presented him the mileage book. The conductor noticed the date at which it was punched to expire, and refused to accept the mileage contained in it for plaintiff's fare. Plaintiff testified:

"I told him where I bought it, and about when I got it, and showed him the stamp on the back. He says, 'It is very evident that the book was punched a year by mistake, and you will have to take the book as it is.'"

On arriving at St. Paul, the conductor again demanded plaintiff's fare. Plaintiff refused to pay anything except the transportation in the book, and thereupon the conductor caught him by the arm, and led him out of the car onto the platform. He then hastened to the depot, purchased a new ticket, and again boarded the same train, and rode to his destination.

1. We are of the opinion that there was sufficient evidence to sustain a verdict for plaintiff for some amount, and that the court below erred in dismissing the action. It is contended by respondent that there is no evidence that there was any mistake in punching the date on which the ticket should expire, and no evidence that there was any agreement that the ticket should expire on any other date than the one punched. The point is not well taken. Respondent itself, as a part of its cross-examination, introduced in evidence a bulletin or circular letter to its conductors, signed by its general passenger agent, in which it is stated that this ticket was erroneously limited to expire June 29, 1895, and that it should be honored by the conductors until June 29, 1896, and plaintiff admitted that, shortly after he was ejected, he was shown a copy of this bulletin.

2. Respondent also contends that the mileage book so signed by plaintiff is a complete contract in itself; that it must be reformed in equity to correct the alleged mistake; and that, until so reformed, plaintiff must stand on the contract as written, citing such cases as Rahilly v. St. Paul, 66 Minn. 153, 68 N. W. 853; Boylan v. Hot Springs, 132 U. S. 146, 10 Sup. Ct. 50, and Fonseca v. Cunard, 153 Mass. 553, 27 N. E. 665. Most of the cases so cited merely hold that, where the passenger signs or accepts such a contract, he is bound by its provisions, whether he read them or expressly consented to them or not. But suppose the contract as written or printed is contrary to the express oral agreement between the parties; must the passenger go into a court of equity, and have the contract reformed, before he can insist that the common carrier shall perform it, or respect it, or pay damages for failure to do so? Would not such a rule of law be contrary to public policy? Is it public policy to throw such a burden on the passenger, and thus to offer a premium on the commission of errors and mistakes by the common carrier, and to shield it in this manner from the consequences of those errors and mistakes? The passenger usually makes his contract for transportation just before entering upon his journey. If he must have his ticket reformed before he can ride upon it, will it not in most cases be worthless to him, especially if the ticket is not transferable or will expire in a limited time? The common carrier is performing a public duty, and is it not contrary to public policy to allow it to adopt any method of doing business which will unnecessarily or unreasonably shield it from the consequences of its own errors and blunders in the performance of that duty, even though such method is adopted only in cases where it carries passengers at reduced rates? But it is unnecessary to decide these questions in this case, and we do not decide them. The limitation placed on this ticket is necessarily void. No man can ride out either 2,000 miles of transportation or $50 worth of transportation on any ordinary passenger train in one day. The ticket was limited to expire on the day it was issued, and it was impossible for the passenger to get the worth of his money out of the ticket on that day; so that the rate charged him for that day's ride would necessarily be extortionate and illegal, and therefore this limitation was void on its face. Then, if respondent's position is correct, that the parties must

68 M.—29.

stand on the contract as written, and cannot prove the oral contract actually made, it would follow that this ticket is unlimited as to time.

3. Respondent further contends that plaintiff did not present to the conductor a ticket apparently valid on its face; that it is a general, necessary, and reasonable rule of all railroad companies that, where a passenger presents a ticket not apparently valid on its face, it is the duty of the conductor to refuse it, and, if the passenger refuses to pay his fare, to eject him; that the passenger is bound to know this rule, and abide by it, and cannot recover damages for being so ejected. Respondent cites Elliott, Railroads, § 1594; Poulin v. Canadian, 3 C. C. A. 23, 52 Fed. 197; Frederick v. Marquette, 37 Mich. 342; and other cases which lay down this rule. We are of the opinion that, so far as it goes, the proper rule on this point is stated in Freeman's note to Com. v. Power, 7 Metc. (Mass.) 596, 41 Am. Dec. note 475, as follows:

"Although the cases on this subject are not entirely consistent with each other, the doctrine deducible from them, and the correct doctrine as it seems to us, is that when one has paid his fare to a certain destination on a railway, to the officer appointed by the company to receive it, the contract for carriage is complete, and he has a right to be carried in accordance with that contract, which cannot be infringed or impaired by any rule of the company or by any mistake or default of its servants. If by a mistake of one of the officers of the company he is not furnished with a proper ticket or check evidencing his right to be carried to his destination, his right nevertheless remains, and if for want of the requisite evidence of that right, another servant of the company refuses to carry him without another payment of fare, the contract is broken, and he has a complete right of action for all damages resulting from such breach. But as the rule requiring him to show a proper ticket or to pay his fare, if demanded, is a reasonable one, he will not be justified in refusing compliance with it, and in remaining in the car until forcibly expelled, merely for the purpose of heaping up damages. He should either pay the fare demanded, or quit the train; and in either case, we think he ought to recover, as a part of his damages, reasonable compensation for the indignity put upon him by the company through the default of its servant. But he can add nothing to his claim by remaining in the car until forcibly ejected, for the rule under which he is ejected, being reasonable, is a complete protection to the company and its servants against the recovery of any damages, directly or indirectly, for an assault made necessary by his own obstinacy, if no more violence than is required for his ejection is used. Such a case stands

upon an entirely different ground from that of a passenger who has a proper ticket, and is nevertheless expelled." Quoted with approval in 4 Elliott, Railroads, 2490, note 3.

But, so far as this rule refuses the passenger damages for being forcibly ejected, it does not apply when, from the circumstances appearing on the face of the ticket and the surrounding circumstances known to the conductor, it is probable that a mistake has been made by the company in issuing the ticket, and this probability is so strong that the conductor should, under the circumstances, investigate further before ejecting the passenger. The statements of the passenger need not be accepted in such a case except so far as they call the conductor's attention to facts and circumstances which he can then and there observe. Any other rule would leave the company at the mercy of every one who might try to impose upon it.

Let us now apply to this case the rules of law thus laid down. The evidence is conflicting as to whether or not the date of the ticket stamped on it as aforesaid could be made out when it was presented to the conductor. Plaintiff testified that the date could then be seen, but the conductor, called by plaintiff, testified that the stamp was then so dim that he could not tell when the ticket was issued. If he could not then decipher the date of issue, the ticket sufficiently appeared on its face to have expired, there was nothing to put him on his guard, and he was justified in ejecting plaintiff. In that case Freeman's rule, above quoted, applies. But, if this date could be seen at that time, then it appeared, as we have already shown, that the ticket had not expired. The conductor, as well as every one else, must be held to know the law. But, even if it could be held that the conductor was not obliged to know the law, the ticket bore on its face sufficient evidence of a mistake in issuing it to put him on his guard, if the date of issue appeared, at least, sufficient evidence to warrant the jury in finding that it put him on his guard, or should have done so. In any such case, a verdict awarding plaintiff damages for being forcibly ejected would be sustained.

The order appealed from is reversed, and a new trial granted.