### BALTIMORE & O. R. CO. v. THORNTON.

(Circuit Court of Appeals, Fourth Circuit. June 17, 1911.)

#### No. 1,019.

1. CARRIERS (§ 356*)—EJECTION OF PASSENGER—ACTION FOR WRONGFUL EJECTION—DEFENSES—DEFECTIVE TICKET.

Plaintiff paid for her carriage as a passenger from Newport News to Parkersburg, W. Va., by boat to Baltimore and from there over defendant's railroad to destination. She received a ticket stating that it was good to the station printed thereon which was punched, and which contained a printed list of the stations on defendant's road as far as Cincinnati, but the agent neglected to punch it for Parkersburg and plaintiff did not notice the omission. The ticket was properly stamped by the agent, and plaintiff's baggage checked thereon to Parkersburg, the fact of the checking being indicated by the letters "B. C." punched therein. It was also accepted and punched on the boat and by defendant's gateman at Baltimore, but the conductor on the train refused to receive it, and although she explained the facts ejected plaintiff at Washington, where she was obliged to lay over, but was finally carried to her destination on the same ticket. *Held* that, conceding that as between conductor and passenger the ticket is conclusive evidence of the contract of carriage, it was the duty of the conductor before ejecting plaintiff to use all reasonable means to ascertain therefrom the extent of her rights; that her ticket was not void, but contained on its face evidence that the agent

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had made a mistake in failing to punch any station, and also, in connection with the baggage check referred to therein, evidence which should have been accepted by any reasonable man as a confirmation of her statements, and that in ejecting her he committed a tort for which defendant was liable in damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1427; Dec. Dig. § 356.*]

**2.** CARRIERS (§ 376*)—EJECTION OF PASSENGER—INVALID TICKET—FORM OF ACTION FOR WRONGFUL EJECTION.

A passenger who without fault on his part, but through the mistake or negligence of an agent of a railroad company, has been given an invalid ticket, and in consequence is ejected from a train for which he has paid fare, may recover damages therefor from the company, whether the action is on the contract or in tort.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1463; Dec. Dig. § 376.*]

**3.** COURTS (§ 360*)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE COURTS—CONTRACTS OF CARRIAGE.

The legal rights of a passenger, growing out of a contract of carriage is not a question of local law but of general substantive law upon which a federal court is not controlled by the decisions of the courts of the state where the contract was made or the cause of action accrued.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 360.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

**4.** CARRIERS (§ 352*)—EJECTION OF PASSENGER—ACTION FOR DAMAGES—DEFENSE—RULES OF COMPANY.

The right of a passenger ejected from a railroad train in violation of his rights to recover damages therefor cannot be affected by any rule of the carrier prescribing the duties of its agents or conductors.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1412–1414; Dec. Dig. § 352.*]

**5.** EVIDENCE (§ 121*)—RES GESTÆ—STATEMENT MADE BY PARTY.

The time, place, and circumstances under which a statement of a party sought to be introduced in evidence was made are always relevant, and may be shown as a part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 307–328; Dec. Dig. § 121.*]

**6.** APPEAL AND ERROR (§ 971*)—WITNESSES (§ 275*)—REVIEW—DISCRETION OF LOWER COURT—EXAMINATION OF WITNESSES.

It is within the discretion of a trial judge to limit the cross-examination of a party testifying as a witness, and his action is not reviewable by an appellate court except for an abuse of discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3852–3857; Dec. Dig. § 971;* Witnesses, Cent. Dig. § 924; Dec. Dig. § 275.*]

In Error to the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

Action at law by Agnes B. Thornton against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. Gray Williams, for plaintiff in error.

J. Winston Read and John N. Sebrell, Jr., for defendant in error.

Before PRITCHARD, Circuit Judge, and DAYTON and CONNOR, District Judges.

CONNOR, District Judge. Defendant in error, hereinafter called plaintiff, instituted this action against plaintiff in error, hereinafter called defendant, and the Merchants' & Miners' Transportation Company, for the recovery of damages alleged to have been sustained by reason of her wrongful expulsion from the car of defendant Baltimore & Ohio Railroad Company. The action was instituted in the corporation court of Newport News, Va., and removed into the Circuit Court of the United States. Plaintiff, in her original declaration, set forth a cause of action sounding in tort. An amended declaration was filed, alleging the same facts as in the original, but averring a breach of contract of carriage. The facts disclosed by the declaration are:

[1] On August 10, 1907, plaintiff purchased from the agent of the Merchants' & Miners' Transportation Company at Newport News a ticket from said point to Parkersburg, W. Va., over the railroad of the defendant, Baltimore & Ohio Railroad Company, via Baltimore and Washington City, paying the fare ($13.75) charged therefor. She was given a ticket entitling her to travel from Newport News "to the station printed thereon, which was punched." The ticket attached to the declaration contained a printed list of stations over defendant road as far as Cincinnati, Ohio, including Parkersburg. The agent selling the ticket neglected to "punch" the word "Parkersburg," which failure was not noticed by plaintiff. The ticket was duly stamped by the agent at Newport News. She exhibited the ticket to the baggage agent at Newport News for the purpose of having her baggage checked and received from him a check to Parkersburg; he punched through the ticket the letters "B. C.," signifying that the passenger's baggage was checked. Plaintiff entered upon the boat of the Merchants' & Miners' Transportation Company and was carried; that is, her ticket was received and punched by the captain on said boat to Baltimore. She was permitted, upon exhibiting the ticket, to pass through the gate of defendant's yard at Baltimore and directed to enter defendant's train of cars for Parkersburg—the ticket was punched—this was about 8 o'clock a. m. About 20 minutes after boarding the train the conductor came to plaintiff and called for her ticket, which she presented, when he refused to accept it and compelled her to leave the car at Washington, and conducted her to an agent of defendant company to have the ticket fixed. The agent to whom the conductor conducted plaintiff said that he was not authorized to "fix" the ticket—that it could not be done until the next morning. Plaintiff told him that she was a stranger in Washington—without friends. The agent said that probably the other agent, when he came on duty, might possibly fix it up for her that day—to have a seat until he came. When the other agent came in, he beckoned plaintiff to the window "took his pencil and marked on the ticket, and said at the same time, 'Your ticket is all right, it will carry you to any place that is marked on here. Your train will leave this evening at 4:05.'" Plaintiff gave an account of her condition and experience while waiting for the train, which she took, reaching Parkersburg the following morning at about 3 o'clock. Defendant demurred to the declaration, saying:

"For specification of the grounds of its demurrer, this defendant alleges that the ticket declared upon in the count of plaintiff's amended declaration does not, upon its face, conform to the contract of carriage set up by the plaintiff. As between the conductor and the passenger, who is the plaintiff here, the ticket declared upon and filed as a part of the declaration is conclusive evidence of the passenger's right to ride and the extent of that right. The ticket declared upon shows, upon its face, that there was no destination indicated and, therefore, there being no allegation that the conductor used more force than was necessary in ejecting the plaintiff from the Baltimore & Ohio train, the ejection was not wrongful or tortious, and the plaintiff's action in tort cannot be sustained as matter of law. The face of the ticket not entitling the passenger to ride to any destination on the Baltimore & Ohio Railroad, it was the right and duty of the conductor to eject her, using no more force than necessary, and the plaintiff cannot sustain an action in tort for the ejection. Any action the plaintiff may have against the defendant must be by suit for damages for the breach of the contract made by the ticket agent at Newport News, who failed to deliver her a ticket to Parkersburg."

It will be convenient to dispose of the question raised by, and argued upon, the demurrer, before discussing the exceptions pointed to the rulings of the lower court during the trial. Defendant's contention is thus clearly stated in the brief:

"The ticket being invalid upon its face, the ejection was not wrongful; therefore, plaintiff's declaration sounding in tort for the wrongful ejection cannot be maintained. She has mistaken her form of action which is for breach of the contract of carriage actually made and for failure to deliver her a true token or ticket conforming to the contract made."

The court overruled the demurrer, and for this ruling defendant makes its first assignment of error.

Counsel for defendant frankly conceded that, if his proposition that the ticket given to plaintiff by the agent at Newport News was invalid could not be maintained, the demurrer was properly overruled. This invites an examination of the question whether the ticket was so manifestly invalid that it conferred upon plaintiff no right to be treated as a passenger or to be carried to Parkersburg. The ticket was properly stamped, showing the station at which it was issued. There could, therefore, be no suggestion that it had come into the possession of plaintiff through any other than a lawful channel. It was not mutilated. The date was the same day upon which it was tendered. It contained unmistakable evidence that it had been recognized by the baggage man at Newport News, and that the plaintiff had received a check for her baggage—it was "punched" showing that the officer on the boat had recognized it as valid, and that the gateman at Baltimore had passed plaintiff into defendant's station upon it. The ticket contained the names of stations over defendant's road beyond Parkersburg, as far as Cincinnati. The only respect in which there was any ambiguity, therefore, was the failure to "punch" the station to which plaintiff was entitled to be carried. Her claim that she was entitled to go to Parkersburg was not contradicted by any printed or written words on the ticket. It must have been apparent to any person of reasonable intelligence that the agent had neglected to "punch" the station to which plaintiff had paid her fare. In this respect the case differs from those cited by counsel or found in the reports.

Conceding the soundness of the rule that, as between the conductor and the passenger, the ticket is conclusive evidence of the contract with the company and of the extent of the passenger's right to remain on the car and pursue her journey, it is manifest that the conductor could not arbitrarily, or without at least a reasonable effort, by an inspection and resort to such sources of information as the ticket contained, ascertain the terms and provisions of the contract made with defendant, refuse to receive it and expel her from the car. It is well settled that the company may make and enforce reasonable rules prescribing and regulating the conditions upon which persons may become passengers and determining their right to remain on the cars and be carried to their destination. There is no evidence in this record showing any rule of defendant company prohibiting the conductor from accepting the ticket as presented; on the contrary, it is conceded that another conductor, on the same day, accepted the ticket without being "punched," and carried plaintiff over the same route pursued by the first train to Parkersburg. The only change made on the ticket was a slight pencil mark made by an employé of the company who, it seems, had no power to change or "fix it." Conceding that the conductor was under no obligation to accept, as true, plaintiff's statement that she paid $13.75, the fare from Newport News to Parkersburg, or to resort to any other source for explanation of the ambiguity, than was indicated by the ticket itself, we yet think that the ticket contained, upon its face, information which any reasonable man, under the circumstances, would promptly, and without hesitation, have resorted to and accepted as conclusive evidence of the extent of plaintiff's right to travel on the train. The letters "B. C." punched through the ticket, were plain and of unmistakable meaning. It is attached to, and made a part of, the declaration. It is but a reasonable construction of the ticket to treat the check as a part of the evidence of the contract of carriage and to construe them together. The contract to carry the plaintiff included the carriage of her baggage to the same point, and that this was evidenced by the check referred to on the ticket and limited to the destination of the passenger was well known to the conductor. The law imposed upon the defendant the duty to give to plaintiff, upon payment of the prescribed fare, a ticket for herself and check for her baggage, which entitled her to all of the rights and privileges of a passenger. · The possession of the check is evidence that she was entitled to go to Parkersburg as a passenger. Moore on Carriers, 548. If, by reason of the negligence of defendant's agent, the ticket was ambiguous or uncertain, it was the duty of the conductor to resort to any source of information on the ticket to explain the ambiguity. "When, from the circumstances appearing on the face of the ticket and the surrounding circumstances known to the conductor, it is probable that a mistake has been made by the company issuing the ticket, and this probability is so strong that the conductor should, under the circumstances, investigate further before ejecting the passenger," the ticket cannot be said to be invalid. Kreuger v. Ry. Co., 68 Minn. 445, 71 N. W. 683, 64 Am. St. Rep. 487.

An examination of the decided cases, cited by counsel, discloses

facts distinguishable from those found in this record. In Pouilin v. Canadian Pac. R. R. Co., 52 Fed. 147, 3 C. C. A. 23, 17 L. R. A. 800, Judge Taft says:

"The plaintiff, before he went aboard the train from which he was ejected, discovered that the agent had made a mistake, and that he had not delivered him a ticket which, on its face, entitled him to return from Quebec to Detroit."

The plaintiff relied upon the statement of some person in the office of the ticket agent that the conductor would understand the mistake and make it all right. While the learned judge, writing for a majority of the court, states the rule that the face of the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the company, plaintiff was not permitted to recover because of his contributory negligence. He said:

"As the conduct of the plaintiff, in attempting to ride on a ticket which he knew did not give him a right to do so was, in our view, negligence in law, the fact that the conductor was negligent could not affect the proper standard of care on the part of the passenger."

Mr. Justice Brown dissented.

In Railroad Co. v. Hill, 105 Va. 730, 54 S. E. 872, 6 L. R. A. (N. S.) 899, plaintiff applied to the defendant's agent at Clinchport for a ticket to Appalachia. He paid the correct fare, but the agent, by mistake, gave him a ticket to Duffield, an intermediate point. He put the ticket in his vest pocket and boarded the train. The conductor took up the ticket and put a check in plaintiff's hat, which indicated that he was entitled to ride to Duffield. When the cars reached that station, plaintiff did not leave the train—the conductor demanded that he pay his fare—which plaintiff refused, telling the conductor that he had bought a ticket to Appalachia. He was ejected and sued therefor. The court held that he was not entitled to sue in tort for the ejection, but was entitled to sue for a breach of the contract—the mistake made by the agent in giving him a ticket to Duffield instead of Appalachia. Here there was nothing on the ticket to indicate that a mistake had been made by the agent. Plaintiff simply had a ticket to one station and demanded that the conductor accept his statement—that he had paid for one to another station. The distinction between that case and the one before us is clearly stated in the language used by the court in Frederick v. Marquette, etc., R. R. Co., 37 Mich. 342, 26 Am. Rep. 531, quoted with approval by Mr. Justice Buchanan:

"How, then, is the conductor to ascertain the contract entered into between the passenger and the railroad company when a ticket is purchased and presented to him? Practically there are but two ways—one, the evidence afforded by the ticket; the other, the statement of the passenger, contradicted by the ticket."

Here, the statement by the plaintiff is not contradicted by the ticket—but, in the light of the check to which the ticket refers and which the conductor could, for the asking, have seen, is fully corroborated. In Texas & P. Ry. Co. v. Smith, 38 Tex. Civ. App. 4, 84 S. W. 852, the ticket was lost. It is true that, there the passenger offered to identify her trunk and show that it had been checked to Dallas, the point to

which she had purchased a ticket. The court held that the conductor was under no obligation to examine it. The reasoning of the opinion is not very satisfactory, and not applicable to the conditions found in this record. In Shelton v. Erie R. R. Co., 73 N. J. Law, 558, 66 Atl. 403, 9 L. R. A. (N. S.) 727, 118 Am. St. Rep. 704, the passenger presented a limited ticket which, by its terms, had expired. The agent, by mistake, gave the passenger a limited, whereas he paid for and was entitled to an unlimited, ticket. The court enforced the rule of conclusiveness of the ticket as between the passenger and the conductor holding that the action should have been for breach of contract and not for the expulsion from the car. There was nothing on the ticket to show, or suggest, that a mistake had been made. As in the other cases, the statement of the passenger was a clear contradiction of the ticket. In Hufford v. Grand Rapids & Ind. Ry. Co., 53 Mich. 118, 18 N. W. 580, the ticket was invalid, and the passenger relied upon the statement of the agent from whom he purchased it—in which statement he was mistaken. Cooley, C. J., says:

"If, when the passenger makes the assertion that he has paid fare through, he can produce no evidence of it, the conductor must, at his peril, concede what the passenger claims or take all the responsibility of a trespasser if he refuses, etc. * * * But we are all of the opinion that, if the plaintiff's ticket was apparently good, he had a right to refuse to leave the car."

This case, upon a new trial, was again before the Supreme Court (64 Mich. 631, 31 N. W. 544, 8 Am. St. Rep. 859) upon plaintiff's appeal. The judgment was again reversed, Sherwood, J., saying:

"When the plaintiff told the conductor, on the train, that he had paid his fare, and stated the amount he had paid to the agent who gave him the ticket he presented, and told him it was good, it was the duty of the conductor to accept the statement of the plaintiff until he found out it was not true, no matter what the ticket contained in words, figures or other marks. All sorts of people travel upon the cars; and the regulation and management of the company's business and trains which would not protect the educated and uneducated, the wise and the ignorant alike, would be unreasonable indeed."

Without undertaking to reconcile the two opinions, we think that the language quoted is in accordance with sound reason, and, therefore, good law. In Erie R. R. v. Winter, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71, the controversy grew out of the failure of the first conductor to whom the passenger presented his ticket to give him a "stop over" check at an intermediate station—the agent selling the ticket had informed the passenger that he could stop at such station by informing the conductor that he wished to do so. The conductor, upon being informed that the passenger wished to stop over, said he would "fix him all right" and punched his ticket, returning it to the passenger, who stopped over at the intermediate station and, upon boarding the train to complete his journey to the station for which the ticket called, presented it to the conductor who refused to accept it and demanded fare, which the passenger refused to pay and was ejected from the car. The contention was made that the ticket was the only and conclusive evidence of the contract of carriage. Mr. Justice Lamar said:

"While it may be admitted, as a general rule, that the contract between the passenger and the company is made up of the ticket which he pur-

chases and the rules and regulations of the road, yet it does not follow that parol evidence of what was said between the passenger and the ticket seller from whom he purchased his ticket is inadmissible, as going to make up the contract of carriage and forming a part of it"— citing Hufford's Case, supra.

It is further said:

"Under the circumstances of the case, as testified to by the plaintiff, the conductor of the first train was derelict in his duty in not providing the passenger with a stop-over check when the latter stated to him that he desired to stop off at Olean (as he had a right to do) if such check was necessary to enable the passenger to complete his journey to Salamanca."

We hold that the ticket, upon its face, afforded sufficient notice to the conductor that a mistake had been made by the agent selling it, to impose upon him the duty to make a reasonable effort to ascertain the truth before resorting to the harsh measure of removing the plaintiff from the car and leaving her, a stranger, in a large city without any care whatever for her safety and welfare. While he may not have so intended, he inflicted upon her, by his action, intense suffering, humiliation, physical pain, and mental anxiety. We hold that she was rightfully on the car and entitled to pursue her journey.

[2] We are further of the opinion that, if her right be measured by the rule in respect to the form of action contended for by defendant—that is, if by the negligence of the agent selling the ticket and without any fault on her part, she was induced to believe, and did believe, that he had, as was his duty, given her a valid ticket, whereas, in truth, the ticket was invalid—the conductor, in ejecting her from the car in the manner testified by him, was guilty of a tort, and defendant is liable for all such damages as proximately flowed therefrom. 6 Cyc. 565 (Note). In P. C. C. Ry. Co. v. Reynolds, 55 Ohio St. 370, 45 N. E. 712, 60 Am. St. Rep. 706, it is said:

"When, by the fault of an agent of the company a passenger takes the wrong train or is without a ticket, or (has) one imperfectly or erroneously stamped, or for any similar reason is ejected by the conductor of the train, in pursuance of the rules of the company, it is liable to him as for a tort."

So, after stating the rule contended for by defendant, it is said:

"The weight of authority in the courts, state and national, however, now is to the effect that the passenger has a right to rely upon the acts and statements of the ticket agent or conductor and that, if expelled from the train when he had acted in good faith and is without fault, the carrier will be liable in damages for such expulsion, whether the action is brought for a breach of the contract or solely for the tort of the conductor; that it is immaterial that the different acts were by different agents of the carrier; that its liability is the same, notwithstanding, for its own convenience, it has intrusted the management of its trains to different conductors. * * * When a passenger has purchased a ticket from a railroad agent, purporting to entitle him to passage to a particular place, and has undertaken his journey therefor, and there is nothing on the face of the ticket and no prior knowledge or notice of the rules of the company, which would make such a ticket invalid, brought home to the purchaser, he is rightfully a passenger on the train, and the company is liable in an action to recover damages for his ejection." Moore on Carriers, 742, 743.

In Northern Pac. R. R. Co. v. Pauson, 70 Fed. 585, 17 C. C. A. 287, 30 L. R. A. 730 (9th Cir.), Hawley, District Judge, after discussing the conflicting views of the courts and citing those cases which hold that, when the agent has made a mistake in giving the passenger a. ticket he is entitled to sue for the ejection, said:

"These cases, as well as the others previously referred to, all proceed upon the broad ground that the passenger was wholly without fault; that he had done all that could reasonably be required of him to do; and that the railroad company, by the mistake or carelessness of its agents or conductor was itself at fault. This is the underlying principle of all the well considered cases upon this subject. This principle is fair to both parties. It is sound, reasonable and just."

In Murdock v. Boston, etc., R. R. Co., 137 Mass. 293, 50 Am. Rep. 307, it is said:

"The plaintiff had a right to act upon the explanation given to him at the time when he bought his ticket. The mistake was that of the ticket seller, in supposing that the punched holes signified that the ticket had been used only to Chester, whereas in fact, according to the defendant's rules for the instruction and guidance of conductors, they signified that it had been used to Pittsfield, a station farther on. The offer of the conductor to give a receipt to the plaintiff for the additional fare which he demanded, stating the circumstances under which it was paid, so that the plaintiff might get back the money, if it should be found that his account of the purchase of the ticket is true, though showing good faith on the part of the conductor did not have the effect to make it the legal duty of the plaintiff to pay the additional fare."

The action was for the tort in the ejection of plaintiff from the car. It is contended that, whatever may be the rule in other courts, state or federal, the Supreme Court of Virginia, the state in which the contract was made, has held that, in such cases, the passenger's cause of action is for breach of the contract and not in tort; that this court should be governed by this decision. In the view which we take of this record the case is distinguished from Hill's Case, supra, and that, therefore, no conflict between our conclusion and the conclusion of the court in that case is presented. We are further of the opinion that. the rule of comity invoked and conceded does not apply.

[3] The character of plaintiff's legal right and defendant's liability is not one of local law or of practice and procedure, but is controlled by the general principles of substantive law, and, in such cases, the federal courts are not bound by the decision of the state court in which the contract is made or the cause of action accrues. Mr. Justice Field, in Myrick v. Mich. Cent. Ry. Co., 107 U. S. 102, 109, 1 Sup. Ct. 425, 431, 27 L. Ed. 325, says:

"What constitutes a contract of carriage is not a question of local law upon which the decision of a state court must control. It is a matter of general law upon which this court will exercise its own judgment." Chicago v. Robbins, 67 U. S. 418, 17 L. Ed. 298.

No question is presented here respecting the validity of the contract or its construction—it is conceded that defendant entered into a valid contract to carry plaintiff from Newport News, Va., to Parkersburg, W. Va. The sole question is whether, upon failure of defendant's agent to deliver to the plaintiff, as was his duty, a proper token or evidence of such contract, the plaintiff for the injury which resulted

therefrom is confined to an action for breach of the contract or may sue in tort for the wrongful conduct of its conductor. No case is called to our attention in which the Supreme Court of Virginia has passed upon, or discussed, a case involving facts essentially similar to those presented in this record. The Hill Case, as we have pointed out, presents a very different state of facts. It is true that it was held in that case that if the ticket did not, by reason of a mistake of the agent, entitle the passenger to go to the station claimed by him, and upon his refusal to pay the fare was ejected from the car, he could not sue in tort. We entertain for the opinion of the Supreme Court of Virginia profound respect, and would hesitate to depart from a conclusion reached by that learned and careful court, upon the same or essentially similar facts as those presented to us. In the decision of this case we do not find it necessary to do so. However, in the light of the conflicting conclusions of courts of eminent respectability and learning treating the ticket as void or a "ticket to nowhere," we incline, very decidedly, to concur with those courts which hold that the company is liable for a breach of duty resulting in injury to a passenger by reason of the mistake or negligence of either of its agents with whom the passenger is required to deal in respect to the transaction in which the several agents are concerned.

[4] While, as conceded, a railroad company may make rules for the guidance of its several employés engaged in a common service, binding upon them, it may not thereby change the standard and measure of duty imposed by the law, which it owes to the public or the remedy for breach thereof. If, by the negligence of the agent, a passenger is given an invalid ticket, and without fault on his part is thereby led to believe, and does in fact believe, that a valid ticket had been given him and in good faith acts upon that belief, we fail to see how, if he sustain injury therefrom at the hands of some other agent of the company in the performance of the duty of carriage, his remedy or measure of recovery can be affected by some rule of the company, unknown to him, prescribing the respective duties of its agents. The passenger deals with the company, which owes him the duty, upon application to the proper agent and the payment of the prescribed fare, to furnish him a proper ticket and, in pursuance thereof, to carry him safely to his destination; he looks to the corporation—the common carrier and not to its employés—to protect his rights and redress his wrongs without regard to rules made for its internal management. Plaintiff's case, upon the uncontradicted testimony, is a striking illustration of the injustice of any other rule. Except in respect to the degree of consideration shown for the feelings of the plaintiff—rudeness of manner, etc.—the conductor does not, in any essential respect, contradict the plaintiff's testimony in regard to what passed between them on the car, the manner of her removal and what occurred thereafter, until he left her in the depot in Washington. In our opinion, without attributing to him any rudeness or a wanton disregard of plaintiff's rights and feelings, his conduct was grossly negligent and inconsiderate. In the aspect of the testimony, most favorable to the defendant, plaintiff has a good cause of action in tort for her wrongful ejection

from the car at Washington, and defendant is liable for all damages which proximately flowed therefrom. What we have said disposes of the demurrer.

[5] The third assignment of error is pointed to the refusal of the judge to permit defendant to use, on cross-examination, a written statement made by plaintiff, unless plaintiff was allowed to show that the statement was made as a part of negotiations for a compromise. We do not perceive any error in this ruling. The time, place, and circumstances under which a statement is made are always relevant as a part of the res gestæ.

[6] We find no error in the ruling of the judge limiting the extent of the cross-examination of the plaintiff. Full and ample latitude was afforded defendant to bring out, upon cross-examination of plaintiff, all of the material facts regarding her condition, cause and effect of her injuries. In his sound discretion, which we think was wisely exercised, the judge placed a reasonable restriction upon counsel in this respect. This was within his discretion and not reviewable unless abused. We have carefully examined the assignments of error in regard to the ruling of the court upon the admission of evidence and other incidents of the trial and find in them no prejudicial error. Defendant moved to strike out certain parts of the testimony and submitted prayers in regard to certain elements of damage to which plaintiff claimed she was entitled, which practically amounted to a demurrer to the evidence in that respect. They were so treated in the argument before us. We have carefully examined the testimony, and are of the opinion that there was both competent and sufficient evidence, in that respect, to be submitted to the jury to sustain her allegation as to the extent and character of the special injuries sustained by her. For reasons appearing upon the record, we do not deem it necessary or proper to discuss this testimony. No legal principle is involved. The court carefully instructed the jury in regard to the doctrine of proximate cause and its application to the testimony in this case. The questions involved were delicate in their character and of admitted scientific difficulty—the physicians introduced by both parties explained to the jury fully the conditions and probable consequences flowing from the situation in which plaintiff was placed by the conduct of the conductor. The jury had the benefit of their opinions based upon facts and physical conditions in regard to which there was but little contradiction. We concur with the learned and careful judge, who tried the case, in the opinion that the verdict should not be disturbed.

Upon an inspection of the entire record, with the aid of the enlightening arguments and briefs of counsel, we do not find any error entitling defendant to a new trial. The Merchants' & Miners' Transportation Company was eliminated from the record in the court below. The judgment must be affirmed.